```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF OKLAHOMA

GARY STOPP,                                    )
                                               )
                Plaintiff,                     )
                                               )
vs.                                            ) No. CIV-09-221-FHS
                                               )
MUTUAL OF OMAHA LIFE INSURANCE COMPANY,        )
                                               )
                Defendant.                     )
```

## ORDER

Before the court for its consideration is the plaintiff's request for reinstatement of long term disability benefits. The court rules as follows on the request.

## **FINDINGS OF FACT**

The plan in question is an employee welfare benefit plan (Plan) providing long term disability coverage to eligible employees of the Agua Caliente Band of Cahuilla Indians (Tribe). The Plan is provided through the Tribe and designates the Tribe as the Plan administrator. United of Omaha Life Insurance Company (United) issued to the Tribe group policy insurance No. GLTD-506E, (Policy) to fund long term disability benefits under the Plan effective March 1, 2006. The Policy designates and delegates to United discretionary authority to interpret the terms of the Plan, and to determine eligibility for entitlement to Plan benefits in accordance with the terms of the Plan.

The Policy provides that United shall pay long term disability benefits if an employee is "Totally Disabled" which means that, for other than a pilot, because of an Injury or

1

Sickness:

> (a)[the Employee is] unable to perform all of the material duties of [his] regular occupation on a full time basis: and
> (b)[the Employee is] unable to generate Current Earnings which exceed 20% of [his] Basic Monthly Earnings due to that same Injury or Sickness.

The Policy further provides that "regular occupation" means a collective description of individual jobs as defined by the United States Department of Labor. Such jobs are considered to belong to a given occupation due to similar job characteristics, requirements and qualifications. The Policy defines "material duties" as duties that are normally required for the performance of the participant's regular occupation, and which cannot be reasonably omitted or modified. Total disability is determined relative to the ability or inability to work, and it is not determined by the availability of a suitable position with the Plan participant's employer. The Policy contains a 90 day waiting period prior to the commencement of any disability benefits.

Plaintiff was employed full-time, as the Chief of Staff of the Tribe until December 22, 2006. As Chief of Staff, his responsibilities included the supervision of 50-60 other employees, travel 15-30% of the time, frequent standing, walking, sitting and balancing, only occasional reaching overhead, and no other physical activities. Major tasks requiring the use of his hands were, computer skills, presentations and travel tasks. Plaintiff turned 50 years old on November 10, 2010.

On January 1, 2007, plaintiff began to feel chest pain and ultimately had a heart bypass operation on January 9, 2007. He

had a previous surgery in 2001.  In February 2007, plaintiff submitted a long term disability claim to United.  In support of this claim plaintiff wrote: (1) he first noticed symptoms of back pain, fatigue and nausea on January 1, 2007; (2) he was first treated for these symptoms on January 2, 2007; (3) he was first unable to work as of January 2, 2007; and (4) he had not returned to work as Chief of Staff and did not expect to return to work in the future.  In his disability claim, plaintiff stated that emotional and physical limitations prohibited him from working due to a "second bypass within 5 years resulting in 10 grafts," and that "high stress, excessive hours, frequent travel, emotional/political environment, operational and supervisory responsibilities, excessive social engagements, multiple/varied projects" in his job prevented him from ever working again.

In February 2007, in support of his claim of disability, Max Ross, the Chief Financial Officer of plaintiff's employer submitted a "Long Term Disability Claim Job Analysis" which listed the physical job duties included in plaintiff's employment and specified how frequently they were performed.  A physician's statement written by his cardiologist, Dr. Narasimha Rao, was also submitted.  It stated he was unsure whether plaintiff could return to work at that time, although his "job title" could aggravate his condition. Dr. Rao also stated plaintiff previously had one coronary bypass surgery and that Dr. Rao first treated plaintiff for his current symptoms on January 5, 2007.  Dr. Rao performed a second coronary bypass on Plaintiff on January 9, 2007.

Despite Dr. Rao's comments, however, no testing results were ever provided to United to support, and the medical records did not reflect, that plaintiff had peripheral neuropathy, extreme

3

muscle weakness, or shortness of breath.  No records were provided, nor was it shown, that any diabetes or sleep apnea conditions were uncontrolled.  No records were submitted from any mental health professional to show plaintiff was treated for depression or anxiety.

In June 2007, plaintiff moved back to Oklahoma and established a patient relationship with Dr. George Cohlmia, a cardiovascular specialist in Tulsa.  United obtained records from Dr. Cohlmia, including office notes and lab reports, which showed "normal" results for most issues and an unremarkable chest x-ray.  No other tests results or record showed any medical issues or mental health consultations.  As of June 26, 2007, Dr. Cohlmia's plan for plaintiff was simply that he should continue to take the medications he was on, return to see Dr. Cohlmia in six months, and have a repeat CT angiogram in one year.

Plaintiff's claim was handled by Frank Mac, a United disability claims analyst.  Mr. Mac started the review process by requesting records from physicians plaintiff listed on his Employee Statement.  He requested records from Dr. Rao and Dr. Steven Gundry.  At this same time, Mr. Mac began through email communications, to address specific issues necessary to the process, such as plaintiff's compensation package, to determine what any correct benefit would be.  He also examined the monthly premiums to determine if they all had been paid and specific plan provisions such as any pre-existing condition limitations.

The medical records ordered by Mr. Mac were reviewed and analyzed.  Dr. Grundy performed a surgery in January 2007. Dr. Grundy's records included notes of plaintiff's two visits after the surgery with Dr. Grundy on January 22, 2007, and on February

26, 2007. These records reveal that plaintiff's weight was down and he was stable.  The medical records secured from Dr. Rao dated March 1, 2007, show that plaintiff had no chest pain or symptoms of congestive heart failure and the only complaint was "depression, post-op" on March 1, 2007.

An internal medical review of the records was performed by Dr. John Rule, United's Medical Director.  On April 2, 2007, Dr. Rule reported on the facts of plaintiff's cardiac condition as set forth in the records of Dr. Rao and Dr. Grundy.  Dr. Rule found that plaintiff would be disabled for a period of time following his surgery, but with an Ejection Fraction of 50% and no other reported symptoms following his surgery, plaintiff should be able to return to work full-time from a strictly disease view point.

By letter dated April 10, 2007, United advised plaintiff that it would approve initial payment on his claim, and in this letter, set forth the amount of benefits determined as a result of the earlier research.  Plaintiff was awarded Limited Temporary Disability (LTD) benefits by the plan in the amount of $11, 250/month based on his monthly salary of $18, 750.00.

After the decision to award LTD benefits, United continued their research on long term disability benefits.  On April 26, 2007, United wrote Dr. Rao asking him, if he believed plaintiff to be disabled from his cardiac condition at the time, to give the medical basis for the opinion, and describe plaintiff's depressive symptoms and occupational demands.  In a letter dated June 11, 2007, Dr. Rao responded that plaintiff was disabled due to his cardiac condition because "he had undergone two coronary artery bypass operation within five years".  Dr. Rao stated that

5

after the second surgery in 2007, plaintiff began experiencing symptoms of extreme fatigue, peripheral neuropathy in the upper extremities, extreme muscle weakness involving the entire body, joint pain, and shortness of breath/anxiety type symptoms when performing any type of physical activity.  He said plaintiff also suffered from diabetes and sleep apnea and complained of depression like feelings. For this, plaintiff was prescribed Cymbalta and was encouraged to undergo professional medical counseling.  Dr. Rao wrote that due to plaintiff's depressive symptoms, he was not able to function in his position as Chief of Staff.

On July 12, 2007, United referred the file and medical records for a peer review.  The peer review was conducted to obtain a recommendation as to whether a sound medical foundation existed for considering plaintiff disabled at that time, or whether United should proceed with an independent medical examination.  On August 6, 2007, Dr. Mitchell S. Nudelman returned an opinion stating that there was not sufficient objective clinical documentation to support the assertion that as of that time, plaintiff was unable to perform the material and substantial duties of his own occupation on the basis of his functional cardiac capacity.  Dr. Nudelmans' opinion, rendered in consultation with a Board Certified Cardiologist, was that it instead appeared the basis for plaintiff's claim of total disability was psycho-social issues.

On September 11, 2007, Dr. Cohlmia reviewed results of a CT angiogram ordered on plaintiff after he had complained of fatigue, tiredness, burning, and chest pain.  Dr. Cohlmia wrote:

> This patient's cardiac status is still fully

> revascularized and it appears that five of
> five bypass grafts are patent. I do not,
> therefore, believe that these symptoms are
> related to his coronary artery disease. I
> would, therefore, recommend medical
> management and follow up subsequently with a
> CT angiogram in one year.

United then arranged for plaintiff to have an Independent Medical Examination performed by a Board Certified Cardiologist, Dr. Yee Se Ong, in Muskogee, Oklahoma. On December 4, 2007, Dr. Ong examined plaintiff and gave this opinion:

> At this time, based on the history, he has to
> be considered disabled. However, due to the
> lack of some objective finding, I will
> recommend a stress test. It is hard to
> determine if he has achieved maximum medical
> benefit from his medical therapy because he
> does not have any recent objective tests. I
> will recommend a stress echocardiogram, EKG,
> chest x-ray, chem. profile, lipid profile,
> HbA1c, and CBD.

In January 2008, United obtained approval from plaintiff's physician Dr. Colhmia to have plaintiff undergo a stress echocardiogram in order to objectify his claim and evaluate his current status in relationship to his cardiac history. Dr. Ong reviewed the results of the March 3, 2008 stress test and stated that plaintiff was able to walk eight minutes on a treadmill with no ST abnormality, no chest pain, and only occasional PCVs, there was no definite contraindication for plaintiff to work. He recommended that plaintiff return to work initially four to six hours per day, but avoid heavy lifting, pushing, or pulling. He also advised that plaintiff could be trained to do other work after rehabilitation.

The benefits which were awarded in April 2007 were based on

an advisability determination, retroactively effective to January 2, 2007, and continued until their termination on March 25, 2008. United based their decision to terminate benefits on this date as a result of the March 3, 2008, stress test.  The basis of the LTD determination was an open heart surgical re-do of a coronary bypass graft on January 6, 2007, which had been previously done in 2001, but failed. The 2001 surgeries included two angioplasties, and an open heart surgery with 5 grafts harvested from plaintiff, all as a result of a second myocardial infarction.  However, after a thorough medical review, United could not find a medical justification for the award of permanent long term disability benefits.

In a letter to plaintiff's counsel dated March 25, 2008, United explained that as of that time, plaintiff had provided no current records from any physicians.  The most current medical documentation contained in the record was the December 2007 IME and stress test results.  There was no indication from the medical records that plaintiff had received continued care and treatment from a physician beyond 2007, and the records did not support that plaintiff was totally disabled within the meaning of the Policy terms.

United further advised plaintiff that since the medical documentation did not support plaintiff's ability to work part time after March 3, 2008, United would pay plaintiff, as an exception, partial disability benefits from March 4, 2008, through April 8, 2008, based on a part-time return to work of 3 weeks at 4 hours per day, and then 2 weeks at 6 hours per day. United advised plaintiff's counsel of plaintiff's right to appeal the decision and advised that it would review any additional information plaintiff or counsel submitted.

In a letter dated December 30, 2008, United advised plaintiff's counsel that in reviewing plaintiff's file, it appeared that additional medical records may be available, and in order to provide plaintiff a full and fair review, invited plaintiff and his counsel to submit any other medical records, including any documentation from 2008. Plaintiff, however, did not submit any additional documentation to support his claim.

United upheld its denial of the claim on appeal and advised plaintiff of the denial by letter to his attorney dated June 30, 2009. The letter discussed plaintiff's medical history and documentation, and concluded the medical records submitted by plaintiff failed to substantiate a condition or conditions that would render him incapable of performing the material duties of his occupation beyond April 8, 2008.

The Plan confers discretional authority upon United to interpret the Policy and determine eligibility for benefits. Because the Plan expressly confers such authority, ERISA's arbitrary and capricious standard applies. This standard is a hard one for a claimant to overcome. Nance v. Sun Life Assurance Co. Of Canada, 294 F.3d 1263, 1269 (10th Cir. 2002). Thus, the court must uphold United's determination unless that decision was "arbitrary and capricious" Id. Under this standard:

> ...the Administrator's decision need not be the only logical one or even the best one. It need only be sufficiently supported by facts within its knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness-even if on the low end. Nance at 1269.

9

The court must review the administrative decision based on the record before the administrator at the time the decision was made. <u>Kimber v. Thiokol Corp.</u>, 196 F.3d 1092, 1098 (10th Cir. 1999). As long as the administrative decision is supported by "substantial evidence" which means "more than a scintilla but less than a preponderance," the decision will not be disturbed. <u>Sandoval v. MetLife, & Cas. Inc. Co.</u> 967 F.2d 377, 382 (10th cir. 1992).

Where there is an inherent conflict of interest, in that the plan administrator both funds the plan and administers the claims, this factor should be weighed with all other case-specific factors to ensure that the plan administrator provides a full and fair review. <u>Metropolitan Life Insurance Company v. Glenn</u>, 554 U.S. 105, 116 (2008). and <u>Nance at 1269.</u> The Tenth Circuit Court of Appeals found that defendant insurance company did not abuse its discretion in denying benefits to a plaintiff where it took steps to reduce its inherent bias by hiring two independent physicians to review the plaintiff's file and examine her, and did not rely solely on the evaluation of medical opinions of its own on-site physicians and nurses. <u>Holcomb v. Unum Life Insurance Company of Americas</u>, 578 F.3d 1187, 1193 (10th Cir. 2009). Further, it has been held that as a general rule, where a plan administrator "chooses to rely upon the medical opinion of one doctor over another...the plan administrator's decision cannot be said to be arbitrary and capricious." <u>Lanier v. Metropolitan Life Insurance Company</u>, 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010).

The court finds that United's decision is reasonable and not arbitrary and capricious because plaintiff was not prevented from performing his regular occupation by reason of a disability as

defined in the Policy.  The court also finds this decision was based on records and materials provided by plaintiff and its own investigation of his cardiac condition.  Under the definition of disability in this case, plaintiff was only eligible for benefits if he was able to show that "because of injury or sickness he was unable to perform all of the material duties of his regular occupation on a full time basis."  United gathered medical records and reviewed them.  It obtained an internal medical opinion.  It also sought a peer review of the records with a Board Certified Cardiologist.  It arranged for an independent medical examination of plaintiff by another Board Certified Cardiologist.  United provided the physical testing of plaintiff recommended by the independent medical doctor.  United kept plaintiff advised of the status at every step of the process.  Ultimately, United determined the evidence failed to support that plaintiff was unable to perform his regular occupation due to any medical condition. United even sought additional information from the plaintiff, but he failed to supplement the record.

Accordingly, this court finds the decision of the defendant to not extend permanent benefits to plaintiff is reasonable and not arbitrary and capricious.

**IT IS SO ORDERED** this 2nd day of March, 2011.

Frank H. Seay
United States District Judge